1 | Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
2 | 409 Camino Del Rio South, Suite 303
San Diego, CA 92108
3 | Telephone: (619) 299-2091
Facsimile:  (619) 858-0034
4 |
Attorneys for Plaintiff Nikolai Grigoriev
5 |
6 |
7 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

8 |
9 |

|  |  |
|---|---|
| NIKOLAI GRIGORIEV,<br>Derivatively On Behalf of AMERICAN<br>APPAREL, INC.,<br><br>              Plaintiff,<br><br>        v.<br><br>DOV CHARNEY, ADRIAN KOWALEWSKI,<br>MARK SAMSON, KEITH MILLER, MARK<br>A. THORNTON, ROBERT GREENE,<br>ALLAN MAYER, NEIL RICHARDSON,<br>              Defendants,<br><br>-and-<br><br>AMERICAN APPAREL, INC.,<br><br>              Nominal Defendant. | Case No. **CV10  6576**-GHF<br>(JCx)<br><br>**VERIFIED SHAREHOLDER<br>DERIVATIVE COMPLAINT**<br><br><br>FILED BY FAX<br><br><br><u>DEMAND FOR JURY TRIAL</u> |

Clerk U.S. District Court
Central Dist. of Calif.
Los Angeles

10 SEP -2 PM 2:38

FILED

---

SHAREHOLDER DERIVATIVE COMPLAINT

## NATURE AND SUMMARY OF THE ACTION

1.    Plaintiff NIKOLAI GRIGORIEV ("Plaintiff"), by his attorneys, hereby submits this Shareholder Derivative Complaint (the "Complaint") on behalf of American Apparel, Inc. ("American Apparel" or the "Company") against certain its officers and directors. Plaintiff asserts state law claims for breach of fiduciary duty against the Individual Defendants (as defined in ¶ 23 below). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiducary duty, abuse of control, corporate waste, unjust enrichment and gross mismanagement.

2.    Plaintiff bases his allegations upon information and belief, except those allegations concerning himself, which are based upon his personal knowledge. Because Plaintiff lacks access to all information and documents on which his claims are based, certain of his allegations are made by necessity upon information and belief. After Plaintiff has had the opportunity to conduct discovery, he will, to the extent necessary and appropriate, amend or seek leave to amend this Complaint. Plaintiff's information and belief is derived from his counsel's investigation, which included counsel's review and analysis of the following: (i) American Apparel's filings with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, conference call transcripts, public statements, analyst reports, news articles, and other publications by or pertaining to American Apparel and the Defendants named herein; and (iii) other publicly available documents.

3.    American Apparel is a vertically integrated manufacturer, distributor and retailer of "hip" clothing for men, women, children and dogs. American Apparel is based in downtown Los Angeles, California and employs approximately 10,000 people globally and operates more than 285 retail stores in 20 countries. American Apparel is a publicly traded company (NYSE Amex) whose stock traded at a high of $16.80 in December 2007.

4.    American Apparel's stock now trades at less than $1.50 a share because the Company has had to disclose — not once, but twice — that its independent accounting auditors have found material weaknesses in its financial controls.

5.    Specifically, American Apparel disclosed in its 2009 SEC Form 10-K that its outside auditor Marcum & Kliegman LLP ("Marcum") had determined that "American Apparel,

1   Inc. has not maintained effective internal control over financial reporting as of December 31,

2   2008." Rather than correcting the deficiencies, the Individual Defendants terminated Marcum's

3   engagement and retained Deloitte & Touche LLP ("Deloitte"). Things did not get any better.

4   American Apparel's 2010 10-K similarly disclosed Deloitte's opinion that "the Company has not

5   maintained effective internal control over financial reporting as of December 31, 2009." Then, on

6   July 22, 2010, Deloitte resigned based on its doubts about the reliability of American Apparel's

7   2009 financial statements.

8         6.     Because of American Apparel's accounting problems it has not yet filed quarterly

9   statements for the last two fiscal quarters. As a result, American Apparel is on the verge of being

10  delisted from the New York Stock Exchange.

11        7.     In addition, American Apparel has been beset by other problems, including having

12  to lay off 1,800 experienced manufacturing employees who could not provide legal documentation

13  in response to a federal immigration investigation. Losing one third of its manufacturing

14  employees seriously damaged American Apparel's manufacturing efficiency and also seriously

15  damaged its public image, especially since one of its main selling points is that its garments are

16  "Made in the USA."

17        8.     The Individual Defendants' failure to ensure adequate accounting controls at the

18  Company, as well as their other misconduct, has damaged American Apparel and its shareholders.

19  At least two law firms have announced that they are investigating American Apparel's potential

20  violations of state and federal securities laws. Additionally, the Company's goodwill and

21  reputation are materially undermined and tarnished as a direct result of the Individual Defendants'

22  actions.

23        9.     Plaintiff brings this derivative action to: (i) recover damages against the Individual

24  Defendants for the benefit of the Company; and (ii) require the Company to reform and improve its

25  corporate governance and internal procedures to protect American Apparel and its shareholders

26  from a repeat of the damaging events described below.

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

**JURISDICTION AND VENUE**

10.     This court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332, diversity jurisdiction.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. Section 1367.  American Apparel conducts business in California and has its principal place of business at 747 Warehouse Street, Los Angeles, California 90021, within this judicial district.  Thus, American Apparel is a resident and citizen of California, and of this judicial district.  Likewise, certain of the Individual Defendants are residents and citizens of California and reside within this judicial district.

11.     Venue is proper in this Court because some or all of the events giving rise to Plaintiff's claims occurred in substantial part and/or had effect in this jurisdiction.  American Apparel conducts business in California and has its principal place of business at 747 Warehouse Street, Los Angeles, California 90021, within this judicial district.  Thus, American Apparel is a resident and citizen of California, and of this judicial district, and conducts business within this judicail district.   Likewise, certain of the Individual Defendants are residents and citizens of California and reside within this judicial district.

12.     This action is not a collusive one to confer jurisdiction on acourt of the United States which it would not otherwise have.

**THE PARTIES**

13.     Plaintiff is an owner and holder of American Apparel common stock and was a shareholder of American Apparel at the time of the transactions of which Plaintiff complains. Plaintiff is a resident of Quebec, Canada.

14.     Nominal Defendant American Apparel is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 747 Warehouse Street, Los Angeles, California 90021.

15.     Defendant Dov Charney ("Charney") has served as the Chairman of the Board of Directors ("Board"), Chief Executive Officer, President, and a Director of American Apparel since it went public in December 2007.   On information and belief, Charney is a resident of Los Angeles, California.  Before that, Defendant Charney served as director, chief executive officer

SHAREHOLDER DERIVATIVE COMPLAINT

1 | and president of American Apparel's predecessor companies since 1989 when he founded them in

2 | Columbia, South Carolina. He currently owns 53% of the Company's stock.

3 |     16.   Defendant Adrian Kowalewski ("Kowalewski") became a member of American

4 | Apparel's Board in December 2007 and currently serves as a Director, Executive Vice President,

5 | and Chief Financial Officer for the Company. On information and belief, Kowalewski is a resident

6 | of Los Angeles, California.

7 |     17.   Defendant Mark Samson ("Samson") is currently a member of the Board and has

8 | been since December 2007. Additionally, Defendant Samson chairs the Board's Audit Committee.

9 | On information and belief, Samson is a resident of New York.

10 |     18.   Defendant Keith Miller ("Miller") is a member of the Board and has been since

11 | December 2007. Additionally, Defendant Miller chairs the Board's Compensation Committee

12 | and also serves on the Board's Audit Committee and Nominating Committee. On information

13 | and belief, Miller is a resident of New York.

14 |     19.   Defendant Mark A. Thornton ("Thornton") is a member of the Board and has been

15 | since December 2007. Additionally, Defendant Thornton chairs the Board's Nominating

16 | Committee and also serves on the Board's Audit Committee and Compensation Committee. On

17 | information and belief, Thornton is a resident of New York.

18 |     20.   Defendant Robert Greene ("Greene") is a member of the Board and has been since

19 | December 2007. Additionally, Defendant Greene serves on the Board's Nominating Committee

20 | and Compensation Committee. On information and belief, Greene is a resident of California and /

21 | or New York.

22 |     21.   Defendant Allan Mayer ("Mayer") is a member of the Board and has been since

23 | December 2007. Additionally, Defendant Mayer is a member of the Board's Compensation

24 | Committee.   On information and belief, Mayer is a resident of Malibu, California.

25 |     22.   Defendant Neil Richardson ("Richardson") is a member of the Board and has been

26 | since March 2009. On information and belief, Richardson is a resident of Great Britain.

27 |     23.   The defendants listed in ¶¶ 15-22 are referred to in this complaint as the "Individual

28 | Defendants."

1    24.    Plaintiff is informed and believes, and on that basis alleges, that each of the

2 defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's

3 injuries as herein alleged were proximately caused by conduct of these defendants.

4    **DUTIES OF THE INDIVIDUAL DEFENDANTS**

5    25.    By reason of their positions as officers, directors and/or fiduciaries of American

6 Apparel, and because of their ability to control the business and corporate affairs of American

7 Apparel, the Individual Defendants owed American Apparel and its shareholders fiduciary

8 obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost

9 ability to control and manage American Apparel in a fair, just, honest and equitable manner. The

10 Individual Defendants were and are required to act in furtherance of the best interests of American

11 Apparel and its shareholders so as to benefit all shareholders equally and not in furtherance of their

12 personal interest or benefit.

13    26.    Each director and officer of the Company owes to American Apparel and its

14 shareholders the fiduciary duty to exercise good faith and diligence in the administration of the

15 affairs of the Company and in the use and preservation of its property and assets, and the highest

16 obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the

17 Individual Defendants had a duty to maintain sufficient and proper internal accounting controls and

18 to promptly disseminate accurate and truthful information with regard to the Company's revenue,

19 margins, operations, performance, management, projections and forecasts so that the market price

20 of the Company's stock would be based on truthful and accurate information.

21    27.    To discharge their duties, the officers and directors of American Apparel were

22 required to exercise reasonable and prudent supervision over the management, policies, practices

23 and controls of the financial affairs of the Company. By virtue of such duties, the officers and

24 directors of American Apparel were required to, among other things:

25        a)  ensure that the Company implements and maintains effective internal accounting

26            and internal control policies and procedures to prevent any reportable and material

27            weaknesses with the Company's financial reporting;

28

b) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

c) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

d) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

e) supervise the preparation and filing of any audits, reports, or other information required by law of the Company, and examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company, and make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth herein;

f) remain informed as to how American Apparel conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

g) ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

28.    The conduct of the Individual Defendants complained of herein involves a violation of their obligations as directors and officers of American Apparel, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

29.     The Individual Defendants breached their duties of loyalty and good faith by allowing, or by themselves causing, the Company to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent the Individual Defendants from taking such illegal actions.

30.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of American Apparel, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with American Apparel, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

31.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least March 16, 2009, and continuing thereafter. During this time, the Individual Defendants caused the Company to conceal the true facts as alleged herein.

32.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of American Apparel common stock so the Individual Defendants could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

33.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently fail to maintain effective accounting and internal control policies and procedures. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

1   34.   Each of the Individual Defendants aided and abetted and rendered substantial

2   assistance in the wrongs complained of herein. In taking such actions to substantially assist the

3   commission of the wrongdoing complained of herein, each Individual Defendant acted with

4   knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

5   wrongdoing, and was aware of his or her overall contribution to and furtherance of the

6   wrongdoing.

7   35.   At all times relevant hereto, each of the Individual Defendants was the agent of each

8   of the other Individual Defendants and of American Apparel, and was at all times acting within the

9   course and scope of such agency.

## FACTUAL ALLEGATIONS

### Background

12   36.   While in high school, Defendant Charney began importing T-shirts across the border

13   to his Canadian friends. In 1990, he dropped out of Tufts University to pursue his T-Shirt business

14   full time. He borrowed $10,000 from his father and moved to South Carolina to transition from

15   importing T-shirts to manufacturing them.

16   37.   In 1991, Charney began making T-shirts under the American Apparel brand. The

17   primary market objective was to sell garments to screen printers and wholesale clothiers in the

18   United States and Canada.

19   38.   In 2000, American Apparel moved into its current 800,000 square feet factory in

20   downtown Los Angeles. In 2003 it expanded into the retail market. Today, American Apparel is

21   one of the nation's leading retail brands with more than 280 retail stores worldwide. American

22   Apparel has an almost cult-like following based largely on its unique advertising campaigns that

23   spotlight the Company's treatment of its workers and promote American Apparel's goods as "Made

24   In The USA" and "sweatshop free."

25   39.   In December 2006, Charney entered into an agreement to sell American Apparel for

26   $360 million to a special purpose acquisition company as a way of taking the company public. As a

27   result of the agreement, Charney was named Chairman, President and Chief Executive Officer of the

28

1  new publicly-traded American Apparel.  He remained the majority shareholder owning 53% of the

2  Company's stock.

3     40.    As Chairman/President/CEO, Charney is directly involved in every aspect of the

4  Company's business, including picking and photographing the models used in the Company's

5  advertisements.  He walks through the factory most days, talking to employees, handling fabrics and

6  seeing garments being made.  His mobile number is available to all employees and he prides himself

7  on returning all calls.  Charney's tenure has not been without controversy, however.

8     41.    Over the past several years, he has been sued numerous times by female employees

9  for sexual harassment.  It is reported that Charney makes retail managers photograph female store

10  employees so that he can ensure they fit his aesthetic tastes, which include full eyebrows and long,

11  natural hair.

12     42.    In 2007, film director Woody Allen sued American Apparel for using his picture in

13  one of its advertisements.  The advertisement, which was created by Charney, was meant to be a

14  parody of Charney's sexual scandals compared with Allen's infamous sex scandal.  American

15  Apparel eventually agreed to pay Allen $5 million to settle the lawsuit, which is the largest reported

16  invasion of privacy settlement in New York state history.

17              **American Apparel's Undocumented Employee Problem**

18     43.    In July 2009, the federal Immigration and Customs Enforcement agency ("ICE")

19  began auditing companies in the United States, including American Apparel, for potential violations

20  of the United States immigration laws.  ICE sought documentation from American Apparel's

21  approximately 5,100 mostly Hispanic factory workers that they were in the country legally.  More

22  than 1,800 employees could not produce the requested documents.  After months of negotiations

23  with ICE, American Apparel laid off these 1,800 workers.

24     44.    In public statements, Charney tried to re-assure investors that the loss of one third of

25  American Apparel's manufacturing employees would not hurt American Apparel because it had

26  enough inventory on hand to satisfy demand until new employees could be hired.  American Apparel

27  was eventually forced to admit in a press release dated March 25, 2010 that its gross margin was

28  negatively affected "by a substantial reduction in manufacturing efficiency at the Company's

1  production facilities in the fourth quarter of 2009 compared to the prior year period. The reduction in

2  manufacturing efficiency was principally a result of the forced termination of over 1,500

3  experienced manufacturing employees in the third and fourth quarters of 2009 following the

4  completion of the previously disclosed I-9 inspection by U.S. Immigration and Customs

5  Enforcement."

6       45.    Further, American Apparel branded itself as one of the United States' most socially

7  responsible retailers and one of its main selling points was that its goods were "Made in the USA."

8  The fact that a significant portion of its workforce was made up of illegal immigrants has

9  significantly harmed American Apparel's public image and reputation.

10  **American Apparel's Accounting Problems**

11       46.    On March 16, 2009, the Individual Defendants caused the Company to issue its SEC

12  Form 10-K for the fiscal year ended December 31, 2008. That 10-K included a report from

13  American Apparel's independent auditor, Marcum entitled "Report of Independent Registered Public

14  Accounting Firm On Internal Control Over Financial Reporting." According to the report, "the

15  following material weaknesses have been identified and included in the "Management's Report on

16  Internal Control Over Financial Reporting:"

17        1.    **Inadequate Expertise in the Application of U.S. General Accepted
18  Accounting Principles**: At its foreign offices, the Company did not have a sufficient
    number of adequately trained accounting personnel with appropriate expertise in
19  United States generally accepted accounting principles (US GAAP). Also, the
    Company lacked sufficient US GAAP expertise to ensure that certain complex
20  material and non-routine transactions were properly reflected in its consolidated
    financial statements. Consequently, the Company may not anticipate and identify
21  accounting issues, or other risks critical to financial reporting, that could materially
    impact the consolidated financial statements.

22        2.    **Inadequate Review**: In certain instances, the Company's personnel, at both
    U.S. and foreign operations, did not perform adequate independent review of
23  reconciliations and other processes.

24        3.    **Inadequate Financial Information Systems**: The Company's world-wide
    financial information systems were not integrated and contained many manual
25  processes that may prevent the Company from meeting regulatory filing
    requirements on a timely and accurate basis. The Company has also identified
26  information technology control weaknesses in the areas of information security, end-
    user computing, systems program development and change controls.

27

28                  *    *    *

10

SHAREHOLDER DERIVATIVE COMPLAINT

*In our opinion, because of the effect of the material weaknesses described above on the achievement of objectives of the control criteria, American Apparel, Inc. has not maintained effective internal control over financial reporting as of December 31, 2008, based on criteria established in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission* (emphasis added).

47.    In April 2009, American Apparel terminated Marcum and hired Deloitte as its independent auditor.

48.    On March 31, 2010, the Individual Defendants caused the Company to issue its SEC Form 10-K for the fiscal year ended December 31, 2009.  The "Management's Report on Internal Control Over Financial Reporting" included in the 10-K included the following statement:

**Remediation of Previously Identified Material Weakness & Other Remediation Activities**

While we implemented certain controls to remediate deficiencies in our internal controls over financial reporting during 2009, certain material weaknesses identified as of December 31, 2008 still remain to be remediated.  Our material weaknesses as of December 31, 2009 represent continuing material weaknesses identified as of December 31, 2008.  The following describes the remediation activities performed during 2009 for the partially remediated material weaknesses in the control environment and financial closing and reporting process, as well as, the completed remediation of the material weakness over the inadequate financial information systems as disclosed in the quarterly report on Form 10-Q for the quarter ended September 30, 2009.

49.    The 2010 10-K also included Deloitte's "Report of Independent Registered Public Accounting Firm."  According to the report, "the following material weaknesses have been identified and included in management's assessment:"

*Material weakness related to the control environment*. In certain instances, the Company did not maintain an adequate control environment that fully emphasized the establishment of, adherence to, or adequate communication regarding appropriate internal control over financial reporting.  Specifically, the Company did not have adequate controls in the following areas for the purposes of establishing, maintaining and communicating its control environment: (i) a sufficient number of adequately trained accounting personnel in its foreign subsidiaries with appropriate expertise in GAAP, (ii) a sufficient number of trained accounting personnel with expertise in GAAP to ensure complex material and/or non-routine transactions are properly reflected in its consolidated financial statements and (iii) a process to adequately capture and communicate relevant changes in contractual arrangements that have a financial impact.  Consequently, the Company may not anticipate and identify accounting issues, or other risks critical to financial reporting, that could materially impact its consolidated financial statements.

*Material weakness related to financial closing and reporting process*. The Company did not perform adequate independent reviews and maintain effective controls over the preparation of its financial statements in the following respects:

preparation of the consolidated financial statements and related notes thereto, account analyses, account summaries and account reconciliations prepared in the areas of inventory and related inventory reserves, fixed assets, deferred rent, cost of sales and certain other accounts.  Specifically related to inventory, the Company determined that certain merchandise inventory costs were not accurately analyzed and recorded by its foreign subsidiaries resulting in a material reduction in inventory and an increase in cost of sales.  The Company also identified deficiencies in (i) inventory costing related to its retail segment that was offset by adjustments in transfer pricing (ii) management's identification and evaluation of manufacturing variances resulting from out-of-date standard costs and recent changes in the manufacturing process and (iii) the timely completion of management's evaluation of excess and obsolete inventory reserves.  These deficiencies in the Company's internal controls over the financial closing and reporting process increase the likelihood of potential material errors to the consolidated financial statements.

\*          \*          \*

*In our opinion, because of the effect of the material weaknesses identified above on the achievement of the control criteria, the Company has not maintained effective internal control over financial reporting as of December 31, 2009, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission.* (emphasis added).

50.   On May 19, 2010, the Individual Directors caused the Company to issue a SEC Form 8-K disclosing, among other things, that it was not in compliance with the SEC's requirement that it timely file a 10-Q report for the quarter ended March 31, 2010.  According to the 8-K, it was unable to file timely financial statements because the company was still reviewing certain items "including retail store impairment, inventory reserves and the provision for income taxes."  The 8-K further disclosed that "[o]n May 18, 2010, the Company received a letter from the NYSE Amex LLC (the "Exchange") stating that the Company's timely filing of its Quarterly Report on Form 10-Q for the quarter ended March 31, 2010 (the "Form 10-Q") is a condition for the Company's continued listing on the Exchange . . . and that the company's failure to timely file the Form 10-Q is a material violation of the Company's listing agreement with the Exchange."  The Exchange directed American Apparel to file a Form 10-Q by August 16, 2010, or else it would be de-listed.

51.   On July 29, 2010, the Individual Defendants caused the Company to issue an SEC Form 8-K disclosing that "Effective July 22, 2010, Deloitte & Touche, LLP ("Deloitte") resigned as the independent registered public accounting from of American Apparel, Inc. (the "Company")."  The 8-K further disclosed that "Deloitte advised the Company that certain information has come to

1   Deloitte's attention, that if further investigated may materially impact the reliability of either its

2   previously issued audit reports or the underlying consolidated financial statements for the year ended

3   December 31, 2009 included in the Company's 2009 Form 10-K." The 8-K further disclosed that

4   "Deloitte has requested that the Company provide Deloitte with the additional information Deloitte

5   believes is necessary to review before the Company and Deloitte can reach any conclusions as to the

6   reliability of the previously issued consolidated financial statements for the year ended December

7   31, 2009 auditors' report thereon." Notably, the Company rehired Marcum — the same accounting

8   firm it fired a year earlier — to replace Deloitte.

9         52.    After the news that Deloitte resigned became public, American Apparel's shares

10   tumbled from $1.81 per share to close at $1.55 per share, on abnormally high trading volume.

11        53.    On August 10, 2010, the Individual Directors caused the Company to announce that it

12   would be late in filing its Form 10-Q for the 2010 second fiscal quarter.  Among the reasons given

13   for the delay: (1) "[t]he Company's new auditors, Marcum, need sufficient time to complete their

14   review procedures for the quarter ended June 30, 2010, as well as for the quarter ended March 31,

15   2010; and (2) "[t]he Company is also working to provide Deloitte with the additional information

16   requested by them as further described in the July 28, 2010 Form 8-K. The Company is working

17   diligently to finalize its Form 10–Q."

18                            **DAMAGES TO THE COMPANY**

19        54.    As a result of the Individual Defendants' improprieties, American Apparel failed to

20   maintain proper internal accounting controls.  The Company will likely face lawsuits alleging

21   violations of the federal securities laws.  Indeed, at least two law firms have announced they are

22   investigating potential class actions against American Apparel.

23        55.    American Apparel will likely also have to re-state its previously filed financial

24   earnings after its auditors complete their investigations, which will no doubt cause American

25   Apparel's stock price to drop even further. As a direct and proximate result of the Individual

26   Defendants' actions as alleged above, American Apparel's market capitalization has been

27   substantially damaged.

28

56.   Further, as a direct and proximate result of Individual Defendants' actions, American Apparel has expended and will continue to expend significant sums of money that it otherwise would not have had to. Such expenditures include, but are not limited to:

    a) Costs incurred in investigating and defending American Apparel and certain officers in the class actions, plus potentially millions of dollars in settlements or adverse judgment;

    b) Costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on American Apparel's artificially-inflated stock price and inflated revenues; and

    c) Costs incurred from the loss of the Company's customers' confidence in American Apparel's services.

57.   As a result of the Individual Defendants' misconduct, American Apparel's corporate image and goodwill have been irreparably damaged. American Apparel's Board has misled the investing public, such that American Apparel's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

58.   Plaintiff brings this action derivatively in the right and for the benefit of American Apparel to redress injuries suffered, and to be suffered, by American Apparel as a direct result of the breaches of fiduciary duty, as well as the aiding and abetting thereof, and unjust enrichment by the Individual Defendants. American Apparel is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

59.   Plaintiff will adequately and fairly represent the interests of American Apparel in enforcing and prosecuting its rights.

60.   Plaintiff has continuously held the stock of American Apparel during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

SHAREHOLDER DERIVATIVE COMPLAINT

61.    The current Board of American Apparel consists of the following nine individuals: defendants Charney, Kowalewski, Samson, Miller, Thornton, Greene, Mayer, Richardson, and non-defendant Lea. Plaintiff has not made any demand on the present Board of American Apparel to institute this action because such a demand would be a futile, wasteful and useless act. Demand is futile for a combination of the following reasons:

**Defendant Charney**

62.    Charney is the Founder, Chairman, President, and CEO of the Company. The principal professional occupation of Charney is his employment with American Apparel, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. In fact, over the past 3 years, American Apparel has paid Charney more than $16 million in salary alone. Given his personal ties to the Company, as well as his significant compensation, Charney is not capable of fairly considering a demand that he initiate this lawsuit against himself or his fellow directors.

63.    Further, as Chairman, President, and CEO, Charney is ultimately responsible for ensuring that American Apparel maintains effective accounting controls and complies with state and federal laws and regulations concerning the employment of undocumented aliens. As discussed above, Charney breached these duties and, thus, is not capable of fairly considering a litigation demand.

64.    In addition, Charney signed the Company's SEC Form 10-K for the fiscal year ended December 31, 2009. Thus, Charney faces a substantial threat of liability should Deloitte's investigation conclude that the financial statements contained therein are unreliable.

65.    The Company admits that Charney is not independent in its SEC Form 10-K for the fiscal year ended December 31, 2009.

**Defendant Kowalewski**

66.    Kowalewski is the Company's CFO. As CFO, one of his main responsibilities is to ensure that the Company maintains effective accounting controls and procedures. Kowalewski breached this duty as discussed above and, thus, is not capable of fairly considering a demand that he initiate this lawsuit against himself or his fellow directors.

67.     Further, Kowalewski signed the Company's SEC Form 10-K for the fiscal year ended December 31, 2009.  Thus, Kowalewski faces a substantial threat of liability should Deloitte's investigation conclude that the financial statements contained therein are unreliable.

68.     In addition, Kowalewski's principal professional occupation is his employment with American Apparel, pursuant to which he received and continues to receive substantial monetary compensation and other benefits.   In fact, over the past 3 years, American Apparel has paid Kowalewski more than $700,000 in salary alone.  Given his significant compensation, Kowalewski is incapable of fairly considering a litigation demand.

69.     Further, because of his positions with the Company, Kowalewski was fully aware of the Company's undocumented employee problem.  However, he did nothing to ensure that American Apparel complied with the applicable state and federal laws and regulations.  As such, he faces a substantial threat of liability.

70.     The Company admits that Kowalewski is not independent in its SEC Form 10-K for the fiscal year ended December 31, 2009.

**Defendant Samson**

71.     Samson is the Chair of the Board's Audit Committee.  The Audit Committee's charter charges the Audit Committee with reviewing the adequacy and effectiveness of the Company's accounting and internal control policies and procedures.   Thus, Samson was expressly responsible for ensuring that American Apparel did not have any material weaknesses in its accounting controls. Samson intentionally breached his fiduciary duties of due care, loyalty, and good faith because Marcum expressly told the Audit Committee that it had material weaknesses in its accounting controls.  Rather than correcting the problems, the Audit Committee fired Malcum and hired Deloitte. A year later, the material weaknesses still existed. Further, Deloitte discovered additional information that caused it to doubt the reliability of American Apparel's financial statements for the fiscal period ended December 31, 2009. Moreover, Samson signed American Apparel's SEC Form 10-K for the fiscal period ended December 31, 2009, thereby representing the accuracy of the statements contained therein, including the financial statements called into question by Deloitte.

1   Thus, Samson faces a sufficiently substantial likelihood of liability that makes any litigation demand

2   upon him futile.

3          72.    In addition, the Audit Committee is also responsible for ensuring that American

4   Apparel complies with all laws and regulations that have a material impact on the Company's

5   financial statements. As detailed above, American Apparel violated state and federal labor law by

6   employing at least 1,800 undocumented workers. The forced layoff of these workers had a material

7   impact on the Company's financial statements. As such, Samson faces a substantial threat of

8   liability such that he cannot fairly consider a litigation demand.

9          **Defendant Miller**

10         73.    Miller is a member of the Board's Audit Committee. The Audit Committee's charter

11  charges the Audit Committee with reviewing the adequacy and effectiveness of the Company's

12  accounting and internal control policies and procedures. Thus, Miller was expressly responsible for

13  ensuring that American Apparel did not have any material weaknesses in its accounting controls.

14  Miller intentionally breached his fiduciary duties of due care, loyalty, and good faith because

15  Marcum expressly told the Audit Committee that it had material weaknesses in its accounting

16  controls. Rather than correcting the problems, the Audit Committee fired Malcum and hired

17  Deloitte. A year later, the material weaknesses still existed. Further, Deloitte discovered additional

18  information that caused it to doubt the reliability of American Apparel's financial statements for the

19  fiscal period ended December 31, 2009. Moreover, Miller signed American Apparel's SEC Form

20  10-K for the fiscal period ended December 31, 2009, thereby representing the accuracy of the

21  statements contained therein, including the financial statements called into question by Deloitte.

22  Thus, Miller faces a sufficiently substantial likelihood of liability that makes any litigation demand

23  upon him futile.

24         74.    In addition, the Audit Committee is also responsible for ensuring that American

25  Apparel complies with all laws and regulations that have a material impact on the Company's

26  financial statements. As detailed above, American Apparel violated state and federal labor law by

27  employing at least 1,800 undocumented workers. The forced layoff of these workers had a material

28

1  impact on the Company's financial statements. As such, Miller faces a substantial threat of liability

2  such that he cannot fairly consider a litigation demand.

3  **Defendant Thornton**

4      75.    Thornton is a member of the Board's Audit Committee. The Audit Committee's

5  charter charges the Audit Committee with reviewing the adequacy and effectiveness of the

6  Company's accounting and internal control policies and procedures. Thus, Thornton was expressly

7  responsible for ensuring that American Apparel did not have any material weaknesses in its

8  accounting controls. Thornton intentionally breached his fiduciary duties of due care, loyalty, and

9  good faith because Marcum expressly told the Audit Committee that it had material weaknesses in

10  its accounting controls. Rather than correcting the problems, the Audit Committee fired Malcum

11  and hired Deloitte. A year later, the material weaknesses still existed. Further, Deloitte discovered

12  additional information that caused it to doubt the reliability of American Apparel's financial

13  statements for the fiscal period ended December 31, 2009. Moreover, Thornton signed American

14  Apparel's SEC Form 10-K for the fiscal period ended December 31, 2009, thereby representing the

15  accuracy of the statements contained therein, including the financial statements called into question

16  by Deloitte. Thus, Thornton faces a sufficiently substantial likelihood of liability that makes any

17  litigation demand upon him futile.

18      76.    In addition, the Audit Committee is also responsible for ensuring that American

19  Apparel complies with all laws and regulations that have a material impact on the Company's

20  financial statements. As detailed above, American Apparel violated state and federal labor law by

21  employing at least 1,800 undocumented workers. The forced layoff of these workers had a material

22  impact on the Company's financial statements. As such, Thornton faces a substantial threat of

23  liability such that he cannot fairly consider a litigation demand.

24  **Defendant Greene**

25      77.    Because of his positions with the Company, Greene was fully aware that the

26  Company lacked effective accounting controls and procedures. Indeed, in March 2009, Marcum

27  disclosed the material weaknesses with the Company's financial controls. Rather than correcting the

28  deficiencies, the Board, including Greene, fired Marcum. As of March 2010, the weaknesses

SHAREHOLDER DERIVATIVE COMPLAINT

1    identified by Marcum still existed.  As such, Greene completely abdicated his fiduciary duties as a

2    director and, thus, faces a substantial threat of liability such that he cannot consider a litigation

3    demand.

4         78.    Further, Greene signed the Company's SEC Form 10-K for the fiscal year ended

5    December 31, 2009.  Thus, Greene faces a substantial threat of liability should Deloitte's

6    investigation conclude that the financial statements contained therein are unreliable.

7         79.    In addition, because of his position Greene was aware of the Company's

8    undocumented employee problem.  However, he did nothing to ensure that American Apparel

9    complied with the applicable state and federal laws and regulations.  As such, he faces a substantial

10   threat of liability.

11   **Defendant Mayer**

12        80.    Because of his positions with the Company, Mayer was fully aware that the Company

13   lacked effective accounting controls and procedures.  Indeed, in March 2009, Marcum disclosed the

14   material weaknesses with the Company's financial controls.  Notably, Mayer signed American

15   Apparel's SEC 10-K for the fiscal year ended December 31, 2008, which contained Marcum's report

16   regarding the deficiencies.  Thus, Mayer was clearly aware that the Company lacked effective

17   accounting controls and procedures.  Rather than correcting the deficiencies, the Board, including

18   Mayer, fired Marcum.  As of March 2010, the weaknesses identified by Marcum still existed.  As

19   such, Mayer completely abdicated his fiduciary duties as a director and, thus, faces a substantial

20   threat of liability such that he cannot consider a litigation demand.

21        81.    Further, Mayer signed the Company's SEC Form 10-K for the fiscal year ended

22   December 31, 2009.  Thus, Mayer faces a substantial threat of liability should Deloitte's

23   investigation conclude that the financial statements contained therein are unreliable.

24        82.    In addition, because of his positions with the Company, Greene was aware of the

25   Company's undocumented employee problem.  However, he did nothing to ensure that American

26   Apparel complied with the applicable state and federal laws and regulations.  As such, he faces a

27   substantial threat of liability.

28   **Defendant Richardson**

SHAREHOLDER DERIVATIVE COMPLAINT

83.   Because of his positions with the Company, Richardson was fully aware that the Company lacked effective accounting controls and procedures. Indeed, in March 2009, Marcum disclosed the material weaknesses with the Company's financial controls. Rather than correcting the deficiencies, the Board, including Richardson, fired Marcum. As of March 2010, the weaknesses identified by Marcum still existed. As such, Richardson completely abdicated his fiduciary duties as a director and, thus, faces a substantial threat of liability such that he cannot consider a litigation demand.

84.   Further, Richardson signed the Company's SEC Form 10-K for the fiscal year ended December 31, 2009. Thus, Richardson faces a substantial threat of liability should Deloitte's investigation conclude that the financial statements contained therein are unreliable.

85.   In addition, because of his positions with the Company, Richardson was aware of the Company's undocumented employee problem. However, he did nothing to ensure that American Apparel complied with the applicable state and federal laws and regulations. As such, he faces a substantial threat of liability.

**All Individual Defendants**

86.   The acts complained of constitute violations of the fiduciary duties owed by American Apparel's officers and directors and these acts are incapable of ratification.

87.   Any suit by the current directors of American Apparel to remedy these wrongs would likely expose the Individual Defendants and American Apparel to violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

88.   American Apparel has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for American Apparel any part of the damages American Apparel suffered and will suffer thereby.

89.    If American Apparel's current and past officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of American Apparel. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by American Apparel against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of American Apparel, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause American Apparel to sue them, since they will face a large uninsured liability.

90.    Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for American Apparel for any of the wrongdoing alleged by Plaintiff herein.

91.    A true and correct copy of the Complaint was delivered to American Apparel before its filing with this Court.

## COUNT I

### Against All Individual Defendants for Breach of Fiduciary Duty (Accounting Violations)

92.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

93.    The Individual Defendants owed and owe American Apparel fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe American Apparel the highest obligation of good faith, fair dealing, loyalty and due care.

94.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

95.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to maintain ineffective internal controls.  These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

96.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, American Apparel has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

97.     Additionally, by their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of American Apparel in a manner consistent with the operations of a publicly held corporation.

98.     As a direct and proximate result of the Individual Defendants' mismanagement and breaches of duty alleged herein, American Apparel has sustained significant damages in excess of the jurisdiction of this Court.  As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

99.     Plaintiff on behalf of American Apparel has no adequate remedy at law.

## COUNT II

**Against All Individual Defendants for Breach of Fiduciary Duty (Labor Law Violations)**

100.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

101.     The Individual Defendants owed and owe American Apparel fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe American Apparel the highest obligation of good faith, fair dealing, loyalty and due care.

102.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

103.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to violate state and federal immigration laws by employing at least 1,800

SHAREHOLDER DERIVATIVE COMPLAINT

1   undocumented workers.  These actions were not a good faith exercise of prudent business judgment

2   to protect and promote the Company's corporate interests.

3       104.    As a direct and proximate result of the Individual Defendants' failure to perform their

4   fiduciary obligations, American Apparel has sustained significant damages.  As a result of the

5   misconduct alleged herein, the Individual Defendants are liable to the Company.

6       105.    Additionally, by their actions alleged herein, the Individual Defendants, either

7   directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary

8   duties with regard to prudently managing the assets and business of American Apparel in a manner

9   consistent with the operations of a publicly held corporation.

10      106.    As a direct and proximate result of the Individual Defendants' mismanagement and

11  breaches of duty alleged herein, American Apparel has sustained significant damages in excess of

12  the jurisdiction of this Court.  As a result of the misconduct and breaches of duty alleged herein, the

13  Individual Defendants are liable to the Company.

14      107.    Plaintiff on behalf of American Apparel has no adequate remedy at law.

15                          **PRAYER FOR RELIEF**

16      WHEREFORE, Plaintiff demands judgment as follows:

17      A.      Against all the Individual Defendants and in favor of the Company for the amount of

18  damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

19  duties and unjust enrichment;

20      B.      Directing American Apparel to take all necessary actions to reform and improve its

21  corporate governance and internal procedures to comply with applicable laws and to protect

22  American Apparel and its shareholders from a reoccurrence of the damaging events described

23  herein, including, but not limited to, putting forward for shareholder vote resolutions for

24  amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as

25  may be necessary to place before shareholders for a vote the following Corporate Governance

26  Policies:

27          1.      a proposal to strengthen the Board's supervision of operations and develop

28  and implement procedures for greater shareholder input into the policies and guidelines of the Board;

1    2.    a provision to permit the shareholders of American Apparel to nominate at

2  least three candidates for election to the Board;

3    3.    a proposal to ensure the accuracy of the qualifications of American Apparel's

4  directors, executives and other employees;

5    4.    a proposal to strengthen the Company's procedures for the receipt, retention

6  and treatment of complaints received by the Company regarding accounting, internal controls and

7  auditing matters; and

8    5.    appropriately test and then strengthen the internal audit and control functions.

9    C.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

10  statutory provisions sued hereunder so as to assure that Plaintiff on behalf of American Apparel has

11  an effective remedy;

12    D.    Awarding to American Apparel restitution from the Individual Defendants, and each

13  of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the

14  Individual Defendants, and to require such Individual Defendants to account for any such profits,

15  special benefits and unjust enrichment obtained by them;

16    E.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable

17  attorneys' fees, accountants' and experts' fees, costs, and expenses; and

18    F.    Granting such other and further relief as the Court deems just and proper.

19                    **JURY DEMAND**

20    Plaintiff demands a trial by jury.

21  DATED:  September 1, 2010                    LAW OFFICES OF DOUGLAS J. CAMPION

22

23                                DOUGLAS J. CAMPION

24

25                                409 Camino Del Rio South, Suite 303
                                San Diego, California 92108
26                                Telephone:  (619) 299-2091
                                Facsimile:   (619) 858-0034
27                                Attorneys for Plaintiff

28

SHAREHOLDER DERIVATIVE COMPLAINT

1

## **VERIFICATION**

2    I, Douglas J. Campion, hereby declare as follows:

3    1. I am the owner of the Law Offices of Douglas J. Campion, counsel for

4  Plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents

5  thereof.   I am informed and believe the matters therein are true and on that ground allege that the

6  matters stated therein are true.

7    2. I make this Verification because Plaintiff is absent from the County of San Diego

8  where I maintain my office.

9    Executed this 1st day of September, 2010 at San Diego, California under the laws of the

10 United States.

11

12 Douglas J. Campion

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Nikolai Grigoriev, Derivatively on behalf of American Apparel, Inc.

**DEFENDANTS**

Dov Charney, Adrian Kowalewski, Mark Samson, Keith Miller, Mark A. Thornton, Robert Greene, Allan Mayer, Neil Richardson, Defendants, and American Apparel, Inc., Nominal Defendant

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Douglas J. Campion (SBN 75381)
Law Offices of Douglas J. Campion
409 Camino Del Rio South, Suite 303, San Diego, CA 92109; (619)299-2091

Attorneys (If Known)

*FILED BY FAX*

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** unknown, according to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC 1332 diversity

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV10  6576**

**FOR OFFICE USE ONLY:**  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Grigoriev:  Quebec, Canada |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| 1) Charney:  Los Angeles; 2) Kowalewski: Los Angeles;  3)  Mayer: Los Angeles; 4)  Nominal Defendant American Apparel, Inc.: Los Angeles | 1) Samson: New York; 2) Miller: New York; 3) Thornton: New York; 4) Greene: New York;  5) Richardson: Great Britain |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _~Douglas Caruso~_   Date  Sept. 2, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

CV-71 (05/08)                                    CIVIL COVER SHEET                              Page 2 of 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV10- 6576 GAF (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Douglas J. Campion, Esq. (SBN: 75381)
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile:  (619) 858-0034

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Nikolai Grigoriev, Derivatively on behalf of
American Apparel, Inc.,

                              PLAINTIFF(S)

                v.

Dov Charney, Adrian Kowalewski, Mark Samson.
Keith Miller, Mark A. Thornton, Robert Greene,
Allan Mayer, Neil Richardson, Defendants, &
American Apparel, Inc., Nominal Defendant.
                              DEFENDANT(S).

CASE NUMBER

**CV10  6576-GAF(JC)**

**SUMMONS**

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
Douglas J. Campion, Esq.                       , whose address is:

LAW OFFICES OF DOUGLAS J. CAMPION              **FILED BY FAX**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108

an answer to the ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __21__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: __2 SEP 2010__            By: _____
                                         Deputy Clerk

                                      *(Seal of the Court)*

CV-01A (01/01)                    SUMMONS